UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGETTE TAYLOR,<br>　　　　Plaintiff,<br>　v.<br>BOSCO CREDIT, LLC, et al.,<br>　　　　Defendants. | Case No.18-cv-06310-JSC<br><br>**ORDER RE: MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 6, 10 |

Plaintiff Brigette Taylor brings this action challenging the wrongful foreclosure of her home under state and federal law. Defendants separately move to dismiss the action for failure to state a claim upon which relief can be granted.[1] (Dkt. Nos. 6, 10.) Having reviewed the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS the motions to dismiss. As currently pled, Plaintiff has failed to state a claim upon which relief can be granted.

## BACKGROUND

### A.　First Amended Complaint Allegations

Plaintiff was the owner of real property at 2448 Covelite Way, Antioch, CA 94531 ("the Property"). (First Amended Complaint (FAC) at ¶ 7.) Plaintiff purchased the Property in December 2005. (*Id*. at ¶ 8.) To secure the purchase, Plaintiff obtained a first lien loan from World Savings in the amount of $567,000 ("First Lien Loan"). (*Id*.) A year later, Plaintiff obtained a second lien loan from Cal State 9 Credit Union in the amount of $150,000 ("Second

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 12 & 16.)

Lien Loan"). (*Id.*)

On June 20, 2008, Bosco Credit LLC became the beneficiary of the Second Lien Loan. (*Id.* at ¶ 9.) Around the same time, Plaintiff was notified that Franklin Credit Management Corporation was taking over the management of her Second Lien Loan. (*Id.*) Plaintiff thereafter received monthly statements from Franklin from approximately June 2008 to April 2010. (*Id.* at ¶ 10.) In April 2010, however, Plaintiff stopped receiving any communications from Franklin, including the monthly statements. (*Id.*) Her last statement indicated that her principal balance was $150,859.51 and the total amount of past due payments was $35,595.84. (*Id.*)

In September 2011, Plaintiff received a Home Affordable Modification Agreement (HAMP) through Wells Fargo Bank on the First Lien Loan. (*Id.* at ¶ 11.) The HAMP modification stated that Plaintiff's First Lien Loan had been permanently modified and that after three years of payment under the modification, Wells Fargo would forgive $266,581.31 of the principal balance owed to it. (*Id.*) Franklin "was also a participant in the HAMP Program" and "[u]nder the HAMP Second Lien Modification Program (2MP) which FRANKLIN was a participant in, after Plaintiff accepted the modification offer on the First Lien, FRANKLIN was required to either (1) offer to modify the Second Lien or (2) extinguish the Second Lien." (*Id.*) Because Plaintiff received no further statements or correspondence from Franklin following her modification with Wells Fargo she believed that Franklin "had extinguished the Second Lien as required under HAMP." (*Id.*)

On June 1, 2014, Plaintiff received a notice from Wells Fargo stating that because of her good standing and in accordance with the terms of the modification, $266,581.31 of her principal balance on the First Lien Loan had been forgiven. (*Id.* at ¶ 12.) Plaintiff's principal balance on this First Lien Loan was therefore $390,000 as of June 1, 2014. (*Id.*)

A little over a year later, in August 2015, Plaintiff received a Notice of Default saying that Plaintiff's Second Lien Loan was approximately $110,000 in arrears. (*Id.* at ¶ 13.) Nearly six months later, on March 1, 2016, a Notice of Trustee's Sale was recorded stating that Plaintiff owed $270,000 on the Second Lien. (*Id.* at ¶ 14.) The following month, another Notice of Trustee's Sale was recorded stating that Plaintiff owed $272,000 on the Second Lien. (*Id.* at ¶ 15.)

In January 2018, Defendants recorded another Notice of Trustee's Sale stating that Plaintiff owed $276,028.71 on the Second Lien Loan. (*Id*. at ¶ 16.) On January 31, 2018, the day the Trustee's Sale was to take place, Bosco "purported to take title of Plaintiff's property by paying $145,209.00 despite the fact that the property was worth at least $600,000 at this time." (*Id*. at ¶ 16.) A Trustee's Deed Upon Sale was thereafter recorded with the Contra Costa County Recorder purporting to transfer title of the Property to Bosco. (*Id*. at ¶ 17.)

### B. Procedural Background

Plaintiff filed this action in the Contra Costa Superior Court on March 27, 2018. She initially pled claims only as to Bosco/Franklin, but then on September 13, 2018, Plaintiff filed her FAC adding a claim as to Wells Fargo. (Dkt. No. 1-1.[2]) The FAC pleads six claims for relief; the first five as to Bosco/Franklin are for: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1026.41; (2) breach of contract; (3) negligence; (4) unfair business practices in violation of Cal. Bus. & Prof Code § 17200; and (5) cancelation of instrument. Her sixth claim, for declaratory relief, is brought only against Wells Fargo. Wells Fargo removed the action to this Court following service asserting federal question jurisdiction based on Plaintiff's RESPA claim.[3] (Dkt. No. 1.) Defendants thereafter separately moved to dismiss. The motions are fully briefed.

## DISCUSSION

### A. Bosco/Franklin's Motion to Dismiss

Bosco/Franklin move to dismiss each of Plaintiff's claims for failure to state a claim.

#### 1) RESPA Claim

Plaintiff's RESPA claim is brought under 12 C.F.R. § 1026.41 which applies to "applies to a closed-end consumer credit transaction secured by a dwelling." 12 C.F.R. § 1026.41(a).

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[3] Generally, a defendant sued in state court may remove the action to federal court if the action could have been brought in federal court in the first instance. 28 U.S.C. § 1441(a). Removal is generally based on the existence of either federal-question jurisdiction or diversity jurisdiction. Federal question jurisdiction exists where the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Bosco/Franklin move to dismiss because Plaintiff's loan with them is a Home Equity Line of Credit and thus an "open-end credit" transaction rather than a closed-end consumer end transaction.[4] Plaintiff concedes in her opposition brief that she pled this claim under the wrong RESPA provision and seeks leave to amend to plead a claim under Section 1026.7. Accordingly, this claim is dismissed with leave to amend.

### 2) Breach of Contract Claim

A claim for breach of contract exists when there is: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Network, Ltd. v. New York Times Company*, 164 Cal.App.4th 1171, 1178, (2008). "If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." *Otworth v. S. Pac. Transp. Co.*, 166 Cal.App.3d 452, 459 (1985).

Here, Plaintiff alleges that Bosco/Franklin breached the clause in the Adjustable Rate Rider attached to the Deed of Trust which required it to provide periodic statements if there was a balance owing on the loan. (FAC ¶¶ 24-25.) The clause provides that the periodic statement would "identify the Effective Interest Rate for your Note, the Minimum Payment you must make for that billing period, and the date it is due." (Dkt. No. 7-1 at 18.) Plaintiff contends that

---

[4] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Courts in this District regularly take judicial notice of publicly recorded documents related to real property, including deeds of trust, assignments and substitutions thereto, trustee's deeds upon sale, rescissions of notices of default, and elections to sell under a deed of trust. *See, e.g., Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C 08–3818 PJH, 2008 WL 4938162, at *2–3 (N.D. Cal. Nov. 17, 2008); *Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*, 393 F.Supp.2d 972, 977–78 (N.D. Cal. 2005); *W. Fed. Sav. & Loan Ass'n v. Heflin*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). Here, Bosco/Franklin request that the Court take judicial notice of Exhibits A-F, which are publicly recorded documents relating to the Property at issue in this case. (Dkt. No. 17.) Exhibits A-F are properly attached and judicially noticeable and the Court GRANTS Bosco/Franklin's unopposed request for judicial notice of these documents. On a 12(b)(6) motion, the Court cannot take judicial notice of Franklin's opt-out of the HAMP Program, Exhibit G (Dkt. No. 7-1 at 54), which is not a publicly recorded document and is offered solely to dispute the factual allegations of the complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("a court may not take judicial notice of a fact that is 'subject to reasonable dispute.' Fed. R. Evid. 201(b).").

Bosco/Franklin breached this clause when it stopped sending her monthly statements in April 2010 (FAC at ¶ 25.) Because of this breach, Plaintiff alleges that she was unaware that she owed any balance to Defendants and thus stopped making monthly payments. (*Id*. at ¶ 27.) However, Plaintiff also alleges that even before she stopped receiving monthly statements, her total amount of past due payments was $35,595.84.

Bosco/Franklin contend that Plaintiff's breach of contract claim fails because Plaintiff has not alleged sufficient facts to show she performed her obligation under the Deed of Trust or that they breached the contract. The Court agrees. Plaintiff alleges that at the time of her last statement "the total amount of past due payments totaled $35,595.84." (FAC at ¶ 10.) While Plaintiff later alleges that she thereafter stopped making her monthly payments because "she believed FRANKLIN had extinguished the Second Lien"—which she contends excused any further performance on her part—the allegation that she already had significant past due payments does not support the inference that she only stopped paying after she stopped receiving the statements. (*Id*. at ¶ 11.) Thus, she has not plausibly alleged that she performed her obligation under the Deed of Trust.

Accordingly, Plaintiff's breach of contract claim is dismissed with leave to amend.

**3) Negligence Claim**

"To prevail on [a] negligence claim, plaintiffs must show that [defendants] owed them a legal duty, that [they] breached the duty, and that the breach was a proximate or legal cause of their injuries." *Merrill v. Navegar, Inc*., 26 Cal.4th 465, 477 (2001). "A loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court of San Diego Cnty*., 145 Cal.App.4th 453, 466 (2006). Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1095–96 (1991).

Bosco/Franklin argue that Plaintiff's negligence claim fails because they do not owe Plaintiff a duty of care, and even if they did, Plaintiff fails to allege sufficient facts to show they breached that duty.

California Courts are split on whether a loan servicer owes a duty of care to handle loans in such a way to prevent foreclosure and forfeiture of property. *See Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67–78 (2013) (holding no duty of care); *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014) (holding loan servicer owed duty of care). Several federal district courts in California agree with *Lueras* that there is no common law duty of care by a servicer with regards to the key functions of a money lender. *See, e.g., Benson v. Ocwen Loan Servicing, LLC*, 562 Fed. Appx. 567, 569–70 (9th Cir. 2014) (concluding the lender did not owe borrower a common law duty of care); *Williams v. Wells Fargo Bank, N.A.*, 2014 WL 1568857, at *7 (C.D. Cal. 2014) ("The Court concludes in accordance with the line of cases holding that loan modification—a renegotiation of the loan's terms—is so related to 'the key functions of a money lender' as to not give rise to an enforceable duty of care to the borrower."); *Griffin v. Green Tree Servicing, LLC*, 2015 WL 10059081, at *14 (C.D. Cal. Oct. 1, 2015) ("The court agrees with the California Court of Appeal in *Lueras* and the Ninth Circuit in *Benson* and *Deschaine* that there is no principled way to distinguish the process of applying for an original loan from the process of applying for a loan modification; both involve activities clearly within the conventional role of mere lenders of money"); *Marques v. Wells Fargo Bank, N.A.*, 2016 WL 5942329, at *8 (N.D. Cal. Oct. 13, 2016) ("The Court agrees and finds the reasoning in *Lueras* more persuasive in finding that mortgage servicers do not owe borrowers a duty of care in the processing of loan modification applications").

The Court follows the Ninth Circuit's guidance in *Benson* and concludes that Bosco/Franklin did not owe Plaintiff a common law duty of care on the facts alleged. However, even if Bosco/Franklin did owe Plaintiff a duty of care, Plaintiff has failed to plead sufficient facts to show that duty of care was breached. Plaintiff alleges that as the servicer and beneficiary of her loan Bosco/Franklin "had a duty to investigate the loan file and to use reasonable care in handling Plaintiff's loan" and that their conduct "fell well below the standard of care in fulfilling this duty as they knew that Plaintiff was required to receive either an extinguishment of the loan or a HAMP modification as required by the HAMP Directive, however, Defendants did not fulfill this duty imposed by the HAMP Directive." (FAC at ¶ 30.) In addition, Plaintiff alleges that had

6

"Defendants acted with reasonable care it would have discovered that Plaintiff's loan was extinguished or, if not extinguished, that Plaintiff was entitled to a modification under the HAMP Directive." (*Id.*) Plaintiff's conclusory allegations do not show how Bosco/Franklin would have known that she was entitled to an extinguishment or modification, what the "HAMP Directive" was, or how Bosco/Franklin would have known that she had obtained HAMP modification with Wells Fargo. Accordingly, even if the Court were to conclude that Bosco/Franklin owed Plaintiff a duty to investigate the status of Plaintiff's other loans, or her eligibility for extinguishment or a HAMP modification of her loan with them, Plaintiff fails to plead breach of those duties. As such, Plaintiff's negligence claim is dismissed with leave to amend.

**4) Unfair Business Practices Claim**

To state a claim for unfair business practices pursuant to California Business and Professions Code § 17200, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To have standing to bring suit pursuant to § 17200, a plaintiff must "make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition" *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590 (2008). The UCL's "'lost money or property' requirement ... requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 320 (2011)).

Bosco/Franklin move to dismiss Plaintiff's Section 17200 claim because it is tethered to her RESPA, breach of contract, and negligence claims and since it argues each of these claims fail, this claim must also fail. Because the Court has dismissed each of these claims with leave to amend, Plaintiff's Section 17200 claim must be dismissed as well. *See Hicks v. PGA Tour, Inc.*, 165 F.Supp.3d 898, 911 (N.D. Cal. Feb. 9, 2016) ("[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims.") (internal citation omitted).

7

### 5) Cancellation of Instruments Claim

Under California Civil Code § 3412 "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Plaintiff alleges that the Trustee's Deed Upon Sale is void because it was recorded in violation of California and federal law; however, as discussed above, Plaintiff has failed to adequately allege a claim under California or federal law. Thus, this claim is likewise insufficiently pled.

### B. Wells Fargo's Motion to Dismiss

Wells Fargo moves to dismiss contending that Plaintiff's only claim pled as to it—for declaratory relief—fails to state a claim because there is no live controversy between the parties.

"Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property…may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract." Cal. Civ. Proc. Code § 1060. "[A] request for declaratory relief will not create a cause of action that otherwise does not exist. Rather, an actual, present controversy must be pleaded specifically and the facts of the respective claims concerning the [underlying] subject must be given." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 80 (2002) (internal citation and quotation marks omitted; alterations in original).

Here, Plaintiff alleges that following Bosco/Franklin's unlawful foreclosure, she was "no longer obligated to make monthly payments to Defendant WELLS FARGO under the first loan and that the duty to make payments or to payoff the loan was assumed by BOSCO and FRANKLIN." (FAC at ¶ 49.) Plaintiff thus seeks "a judicial determination as to whether she remains obligated under the loan to WELLS FARGO." (*Id*. at ¶ 50.) Wells Fargo contends that these allegations fail to support a claim for declaratory relief because Plaintiff has not disputed

8

that she defaulted on the First Lien Loan with Wells Fargo, Plaintiff has not alleged that her mortgage note or Deed of Trust with Wells Fargo required it to seek payments from a subsequent title holder rather than Plaintiff as the debtor, and Plaintiff has not alleged that Bosco/Franklin agreed to assume her obligations under the First Lien Loan with Wells Fargo. According to Wells Fargo, the judicially noticeable documents including the parties' Deed of Trust and Trustee's Deed Upon Sale, and Loan Modification Agreement, in fact provide that if the title to the property transfers to a third party then Wells Fargo can accelerate the payment due under the loan and require full payment, which if not paid, results in default, and also that the First Lien Loan cannot be transferred.[5] (Dkt. No. 11 at 17 (Ex. A at Sec. 26); Dkt. No. 11 at 49 (Ex. I at Sec. 4.H).) Finally, Wells Fargo insists that because Plaintiff admits that she has not made any payments to Wells Fargo following the January 31, 2018 foreclosure sale, she cannot demonstrate that could tender her debt to prevent a Trustee's Sale on the First Lien Loan.

Plaintiff's only response to Wells Fargo's motion to dismiss is to parrot back the same allegation from the FAC that "a present controversy does exist between the parties as Defendant claims that Plaintiff is still obligated under the Deed of Trust, despite the fact that the property secured by the Deed of Trust has been foreclosed upon by a junior lienholder." (Dkt. No. 15 at 5:4-6.) This single conclusory allegation is insufficient to state a claim for declaratory relief. "[A] actual, present controversy must be pleaded specifically and the *facts* of the respective claims concerning the [underlying] subject must be given." *Cashman*, 29 Cal. 4th at 80 (emphasis added).

Accordingly, Wells Fargo's motion to dismiss is granted.

---

[5] Wells Fargo requests judicial notice of various documents related to the Property at issue including the Deed of Trust, the Trustee's Deed Upon Sale, and the Loan Modification Agreement. (Dkt. No. 11 at 5, 43, 46 (Exs. A, H, I).) As previously noted, courts routinely grant judicial notice of these types of publicly available documents relating to real property, *see Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C 08–3818 PJH, 2008 WL 4938162, at *2–3 (N.D. Cal. Nov. 17, 2008), as well as documents referenced extensively in the complaint or documents that form the basis of the plaintiff's claims, *see No. 84 Emp'r-Teamster Jt. Counsel Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). Wells Fargo's unopposed Request for Judicial Notice of Exhibits A, H & I is therefore granted.

**CONCLUSION**

For the reasons stated above, Defendants' separate motions to dismiss are GRANTED. Plaintiff may file a second amended complaint by January 3, 2019 if she has a good faith basis for doing so. Failure to file an amended complaint by that date will result in a dismissal with prejudice.

The Initial Case Management conference scheduled for January 17, 2019 is continued to February 28, 2019 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California. A Joint Case Management Conference Statement is due February 21, 2019.

This Order disposes of Docket Nos. 6 and 10.

**IT IS SO ORDERED.**

Dated: December 11, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge